## Skuaskai v. Philadelphia & Reading Coal & Iron Co.

Argued December 9, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Roger J. Dever,* for appellant, cited: Tigue v. Forty Fort Coal Co., 264 Pa. 590; Morucci v. Susquehanna Collieries Co., 297 Pa. 508; Tolan v. P. & R. C. & I. Co., 270 Pa. 12.

*Penrose Hertzler,* and with him *B. D. Troutman* and *John F. Whalen,* for appellee, cited: Humbert v. Philadelphia & Reading Coal & Iron Co., 93 Pa. Superior Ct. 250; Hunter v. American Steel & Wire Co., 293 Pa. 103.

Opinion by Trexler, P. J., March 5, 1932:

This is a workmen's compensation case. The claimant was in the employ of the defendant company as a coal miner and on November 21, 1929, was injured while crossing the railroad tracks of the Lehigh Valley Railroad Company, which tracks run through the de-

fendant's property. The buildings of this operation are located on both sides of the railroad tracks and the claimant and all other miners who worked at the particular opening where the claimant worked, were required to report in the morning at the lamp shanty, located on the southerly side of the property and to procure a safety lamp and an electric lamp furnished to them by the defendant to be used in their daily occupation.

On the morning in question, the claimant reported to the lamp shanty and procured his lamps and went to the wash house and then proceeded to the place where he was to engage in his work. He travelled a path taken by the employees from the lamp shanty to the wash house, also situated on defendant's property. After changing his clothing, he proceeded on a customary route travelled by employees with the intention of going to the drift in which he worked and as stated, while crossing the tracks of the Lehigh Valley Railroad Company, was struck by an engine and the injuries resulted for which he claims compensation.

There were two ways used to cross the railroad tracks. One was for the accommodation of wagons and pedestrians and was recognized as a private way. The other was a way established by user by the employees, and not apparently authorized by the railroad company. Some employees used one way and some the other. No matter what course the claimant would take, he would be compelled to cross the railroad tracks in order to reach his destination.

The Referee awarded compensation and the Board affirmed the award, holding that the employee was in the course of his employment when injured. Upon appeal to the court of common pleas of Schuylkill County, the Compensation Board was reversed; one of the judges filing a dissenting opinion.

The location where the man was injured was the tracks of the Lehigh Valley Railroad and it is argued that this was not part of the premises of the defendant company. See Black v. Herman, 297 Pa. 230. If we concede this, the question remains whether this claimant was in the course of his employment at the time he was injured. The cases which hold that where a place is provided for employees to wash or to dress therein and they are injured on their way from such place to the place of employment, they cannot recover, are cited in support of the conclusion that the claimant in this case cannot receive compensation. In Houlehan v. Pullman Co., 280 Pa. 402, it was held that where a room was provided by the employer where the employees could put on their uniforms and an employee was killed in going from the room to his place of employment which was some distance away, the accident did not occur during the hours of his employment, nor on the employer's premises, nor while the employee was engaged in the furtherance of the latter's business, and was not compensable. The comment of the lower court is quoted by the Supreme Court: "The fact that Houlehan had put on his uniform, and that the rules of the company forbade wearing it when off duty did not mark the commencement of his service. The rules also required neatness of dress and appearance when reporting for duty, but a shave, shoe shine or changing a collar or shirt could not be construed as the commencement of employment when it was stipulated it should not commence until a fixed hour at a designated place." Nor is the use of the wash house part of the course of employment for such use is optional. Morucci v. Susquehanna Collieries, 297 Pa. 508; Leacock v. Susquehanna Collieries, 98 Pa. Superior Ct. 581. We have, however, in the present case, a situation which can be distinguished from the above.

The lights which the miner procured were furnished by the company and were a necessary part of his equipment. When he came to the house provided by the employer and on the premises of the employer, his contact with the company began. He was in the same position as if he would have stopped to get some necessary implement which was to be employed by him in mining. At the time the claimant was injured, he was not only on his way to work, but he had obtained the means whereby his work was possible and to say that he had not reached the place of his employment does not defeat recovery, for when he obtained the lights and was carrying them with him, although crossing the railroad property, he was about his employer's business. It was part of the furtherance of his employer's business to bring the lamps from the lamp house to the place where he engaged in the actual mining.

As is aptly stated by Judge HOUCK in his dissenting opinion: "Rule 9 of the Anthracite Mine Law provides that whenever safety lamps are required in any mine they shall be the property of the owner of said mine, and such lamps must be examined by a competent person appointed for the purpose immediately before they are taken into the workings for use. It is common knowledge that every mine has a lamp house where the employer keeps these safety lamps and provides for the care and attention they require. How, then, can it be said that an employee goes to the lamp house for his own purposes? He goes to the lamp house to secure a necessary tool of his employment; he secures it because of his employment; and when he reaches the lamp house he is in the course of his employment because he is then actually engaged in the furtherance of the business and affairs of his employer. He has taken the first step required of him in' the performance of his duties ......"

We all think that the decision of the Compensation

Board should have been sustained. The judgment is reversed and the case is remanded to the lower court with the direction that judgment be entered for the amount of the award, with interest from its date.