## No. 14,883.

### THE WARNER CONSTRUCTION COMPANY ET AL. *v.* WATKINS ET AL.
(108 P. [2d] 883)

Decided December 23, 1940.

Mr. FRANK C. WEST, for plaintiffs in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. DEAN JOHNSON, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

This is a proceeding under the Workmen's Compensation Act. The sole questions presented are, whether, under the facts disclosed, the accident resulting in the death of one Thomas P. Watkins, (1) arose out of; and, (2) was in the course of, his employment, concurrent prerequisites to the award of workmen's compensation under section 294, chapter 97, '35 C.S.A. Consistent with previous findings and orders of its referee, the Industrial Commission resolved these questions in the affirmative and awarded compensation to the defendant in error Viola Watkins, a minor, surviving daughter of decedent. The district court affirmed the award and its judgment so decreeing is here challenged by plaintiffs in error, the employer and insurance carrier, upon the grounds hereinabove indicated. The decedent, a mechanic, was employed as a "trouble shooter" to look after emergency

repairs and service on trucks of his employer engaged on a continuous construction operation. Such work was performed either in the employer's shop or at the site where the trucks were being used, a short distance away. To facilitate the work the employer furnished the "trouble shooters" with a light pick-up truck which, according to the shift foreman, they used "any place on the job where they have to go." Decedent lived in a cabin rented from the employer by three fellow employees and himself. This cabin was located on the employer's premises in what was known as the "upper camp," about one hundred yards from the shop. On the day of the accident decedent was working on the 4 p.m. to midnight shift and was the only "trouble shooter" on duty at the time. On this shift the "trouble shooters" were paid for eight hours work without deduction for the time habitually taken for meals. These men, in the words of the superintendent in charge of the entire project, "eat on the fly and are supposed to be on the job eight hours a day and have to live in camp." In contrast, the day shift had thirty minutes off for lunch and were not paid for such time. Following his regular custom while employed on this night shift, and that of other "trouble shooters" living in the upper camp when working these hours, which practice was well known to the shift foremen, decedent on the night in question, at about 8:30 o'clock, in the pick-up truck, proceeded to the rented company cabin for his evening meal. So far as the testimony discloses he had no work requiring his immediate attention at this time. When he had finished eating, not later than 9 o'clock p.m., he re-entered the truck, and because of poor visibility resulting from a snowstorm, opened the front door so that he might see to back the machine out of the cabin yard, permitting his left foot to rest on the running board. As he was thus engaged, a timber from a nearby pile of lumber fell, striking the open door closing it violently against his ankle. Deceased continued to work out his shift, but

at about 4 o'clock the following morning was taken to a physician's office. He died in the afternoon as a result of a pulmonary embolism from infarct from the injured area.

■ Plaintiffs in error claim that during the period of voluntary cessation from active work occasioned as detailed, decedent was not "performing service arising out of and in the course of his employment" ([b] §294, supra), and that the injury received by him during such interval was not proximately caused by an accident arising "out of his employment," ([c] §294, supra), and hence was not compensable. We are not of this view.

The facts bring the proceeding at bar within the purview of *Ocean A. & G. Corporation v. Pallero,* 66 Colo. 190, 180 Pac. 95, where, in the opinion, we quoted with approval the following applicable rule from 1 Honnold on Workmen's Compensation, page 381, section 111: "Acts of ministration by a servant to himself, such as quenching his thrist, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade." In *Employers Mutual Ins. Co. v. Industrial Commission,* 76 Colo. 84, 230 Pac. 394, citing the Pallero case, supra, and *Haller v. City of Lansing,* 195 Mich. 753, 162 N.W. 335, L.R.A. 1917E 324, we upheld an award of compensation where "The claimant was injured during the noon hour. He came out from the mine where he was working and in attending to a call of nature stopped under an old bank on the top of the main slope portal and was

caught by a cavein of this bank. His accident occurred on the employer's premises and during the claimant's working hours." Because of factual analogy and the circumstance that the award therein was attacked on similar grounds, the latter decision properly would warrant an affirmance in the instant proceeding without the citation of other authorities. In addition, however, there has been a consistent adherence to the same general principle in the cases of *Comstock v. Bivens,* 78 Colo. 107, 239 Pac. 869; *Skaggs Co. v. Nixon,* 101 Colo. 203, 72 P. (2d) 1102; *Security Bank v. Propst,* 99 Colo. 67, 59 P. (2d) 798, and *State Fund v. Industrial Commission,* 98 Colo. 563, 58 P. (2d) 759.

While all the cases upon which plaintiffs in error rely deal with a determination of whether the injury involved in each arose out of and was received in the course of the employment therein disclosed, the respective fields of inquiry and the special questions springing therefrom place these decisions in categories different from the case at bar. Simply, none are directly relative here, nor do any of them conflict with the cases cited hereinabove. As specifically illustrative of such lack of pertinency, we mention *Aetna Life Ins. Co. v. Industrial Commission,* 81 Colo. 233, 254 Pac. 995, where the question submitted was whether an accidental injury due to a stroke of lightning—an act of God and a hazard to which all were subject and not a risk peculiar to the involved employment—arose out of or in the course of such. In *Rocky Mt. Fuel Co. v. Kruzic,* 94 Colo. 398, 30 P. (2d) 868, and *London G. & A. Co. v. McCoy,* 97 Colo. 13, 45 P. (2d) 900, our study was directed to whether an injury resulting from lawlessness, not directed against the employee as such nor against the business of the employer, was compensable. The case of *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135, related to an off-the-premises accident in a city street, which did not occur during the working hours of the injured person, but previously thereto. The

facts in *Industrial Commission v. Nissen,* 84 Colo. 19, 267 Pac. 791, likewise place it within the latter classification.

We are, therefore, clearly of the opinion that the award of the Industrial Commission was warranted by the evidence and the law, and that the same was properly approved by the district court. The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK not participating.